UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**FILED**

MAR 2 0 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

| | | |
|---|---|---|
| JAMES A. THOMPSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Case No. 97cv1015 (RJL) |
| | ) | |
| DISTRICT OF COLUMBIA, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

(March __19__, 2007) [#104]

James Thompson ("plaintiff"), a former employee of the District of Columbia Lottery Control Board ("Board"), alleges that he was terminated by the Board for engaging in activities protected by the First Amendment and that the Board failed to afford him a hearing as required by the Fifth Amendment Due Process Clause. Currently before this Court is defendant's motion for judgment on the pleadings. Upon consideration of the defendant's motion and the entire record herein, the Court GRANTS defendant's motion for judgment on the pleadings.

### BACKGROUND

Plaintiff was employed by the Board, a component of the defendant, the District of Columbia government, from 1985 until 1997 as an auditor, and, eventually, as Chief of Security in 1998. (Am. Compl. ¶¶ 10, 70.) In January 1994, plaintiff was reassigned to the Audit Division from the Chief of Security position. (Am. Compl. ¶¶ 31-33.) In the



course of his work as an auditor, plaintiff investigated reports of fraud and misconduct against a contractor hired by the Board, Lottery Technology Enterprise ("LTE") and G-TECH, a sub-contractor for LTE. (*See* Am. Compl. ¶¶ 12-60.) Plaintiff's supervisors repeatedly disparaged his reports and discouraged him from continuing his investigations, but plaintiff disregarded their directions. (*Id.*) In July 1996, plaintiff received an adverse performance evaluation, which plaintiff viewed as retaliation for the allegations in his report about LTE and G-TECH. (Am. Compl. ¶ 59.) In addition, plaintiff claims that there were other episodes of retaliation in the form of various "threats," "reprimands," and "dismissals" from his superiors. (*See, e.g.*, Am. Compl ¶¶ 17-20, 24, 51, 54, 55, 57.)

Later in July 1996, plaintiff was reassigned to a new position in the Security Division. The next day, however, plaintiff was informed that a reduction in force ("RIF") would eliminate his new position effective September 28, 1996. (Am. Compl. ¶ 61.) Plaintiff was then placed on administrative leave until September 18, 1996 and was instructed to return to work on that day "as if he was not part of the RIF." (Am. Compl. ¶¶ 62, 63.) On September 30, 1996, plaintiff was placed in a temporary position as a Security Officer and received an in-grade pay promotion. (*Id.*) He worked in the temporary position until December 18, 1996 when he voluntarily took more than two weeks of sick leave. (Am. Compl. ¶ 68.) On January 7, 1997, the day plaintiff was scheduled to return to work, he informed his supervisor that he could not return to work because of "renewed episodes of stress, anxiety, and depression." (Am. Compl. ¶ 69.)

Plaintiff's temporary position subsequently expired on January 29, 1997, while he was still on sick leave. (Am. Compl. 70.)

Plaintiff filed this suit in May 1997. After a stipulated dismissal of the majority of the counts of his amended complaint on June 26, 2001, only three counts remained. On June 23, 2004, Judge Jackson, a former judge on this Court, granted defendant's motion to dismiss those remaining counts. On October 28, 2005, however, our Circuit Court reversed Judge Jackson's dismissal of plaintiff's First and Fifth Amendment claims and further directed this Court, to whom the case had been reassigned, to dismiss plaintiff's remaining common law claim for lack of subject matter jurisdiction. This Court dismissed that claim on August 18, 2006, and defendant filed its motion for judgment on the pleadings as to the remaining counts on June 5, 2006. For the following reasons, the Court GRANTS this Motion.

## ANALYSIS

Defendant moves for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Under Rule 12(c), any party may move for judgment on the pleadings "[a]fter the pleadings are closed but within such time as not to delay the trial." A motion for judgment on the pleadings shall be granted if the moving party demonstrates that "no material fact is in dispute and that it is 'entitled to judgment as a matter of law.'" *Stewart v. Evans*, 275 F.3d 1126, 1132 (D.C. Cir. 2002) (quoting *Peters v. Nat'l R.R. Passenger Corp.*, 966 F.2d 1483, 1485 (D.C. Cir. 1992)). "In determining whether a complaint states a claim,

the court may consider the facts alleged in the complaint, documents attached thereto or incorporated therein, and matters of which it may take judicial notice." *Stewart v. Nat'l Educ. Ass'n*, 471 F.3d 169, 173 (D.C. Cir. 2006). In considering a motion for judgment on the pleadings, the Court should "accept as true the allegations in the opponent's pleadings" and "accord the benefit of all reasonable inferences to the non-moving party." *Id.* (internal quotation marks omitted).

## A. First Amendment Claim

Plaintiff claims that various adverse actions by his supervisors violated his First Amendment rights because they were retaliation against him for statements he made relating to the investigations he conducted of certain Lottery's contractors. Our Circuit Court reversed the previous District Court's dismissal of this claim after concluding that the record before the District Court was insufficient to support the conclusion that plaintiff's First Amendment claim was without merit.[1] However, shortly after the Circuit Court entered its

---

[1] The Circuit Court applied a four-element inquiry to determine the validity of plaintiff's First Amendment claim as set out in *O'Donnell v. Barry*, 148 F.3d 1126, 1133 (D.C. Cir. 1998). Specifically, the Court asks: (1) whether plaintiff spoke on a "matter of public concern"; (2) whether the governmental interest in "promoting the efficiency of the public services it performs through its employees" outweighs plaintiff's "interest, as a citizen, in commenting upon matters of public concern, and the interest of potential audiences in hearing what [he] has to say"; (3) whether plaintiff has demonstrated that his "speech was a substantial or motivating factor in prompting the retaliatory or punitive act"; and (4) whether the government employer has demonstrated that, even without the protected speech, "it would have reached the same decision." *Thompson v. District of Columbia*, 428 F.3d 283, 285-86 (D.C. Cir. 2005) (quoting *O'Donnell*, 148 F.3d at 1133).
For the second prong, the balancing of the governmental interest, the plaintiff's interest in speech, and the audience's interests, the district court found that the government's "interest in maintaining an efficient workplace in which subordinate employees do not threaten relationships with important contractors and do not routinely disobey their superiors" outweighed plaintiff's

ruling in this case, the Supreme Court in *Garcetti v. Caballos*, 126 S. Ct. 1951 (2006), provided further clarification regarding the doctrine that the First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern. Accordingly, this Court must re-analyze plaintiff's First Amendment claims by applying the analysis provided by *Garcetti*.

In *Garcetti v. Caballos*, the Supreme Court held that the first step in evaluating a First Amendment claim brought by a public employee is to "determin[e] whether the employee spoke as a citizen on a matter of public concern. If the answer is no, the employee has no First Amendment cause of action based on his or her employer's reaction to the speech." *Id.* at 1958. Indeed, the Supreme Court went on to say that when "public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Id.* at 1960. In particular, the Supreme Court explained that "[g]overnment employers, like private employers, need a significant degree of control over their employees' words and actions; without it, there would be little chance for the efficient provision of public services." *Id.*

---

First Amendment rights. *Thompson v. District of Columbia*, No. 97-1015, slip op. at 7 (D.D.C. June 23, 2004). The Circuit Court reversed by holding that the District Court did not have a sufficient record before it to make this finding and remanded for further factual development. *Thompson*, 428 F.3d at 286 ("The district court erred in drawing this conclusion from this limited record.") The Circuit Court made no rulings based upon the first prong of this test. It is important to note, however, that in light of the recent Supreme Court holding in *Garcetti*, 126 S. Ct. 1951, which provided further clarification of the first prong of this test, the District Court must revisit the legal sufficiencies of plaintiff's First Amendment claim.

In this case, the speech at issue occurred in the course of plaintiff's official duties as an auditor and security officer. (*See, e.g.*, Am. Compl. ¶¶ 16, 18, 20.) Moreover, even if plaintiff's speech was outside the bounds of his job description or assignments, his speech was as a government employee and related to his professional responsibilities, as opposed to his thoughts as a private citizen. Thus, because "[r]estricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen," but "simply reflects the exercise of control over what the employer itself has commissioned or created," *Garcetti*, 126 S. Ct. at 1960, plaintiff's reports to his superiors regarding his audits are not protected by the First Amendment. Accordingly, plaintiff's complaint does not state a claim pursuant to the First Amendment, and, therefore, must be dismissed.

## B. Fifth Amendment Claim

Plaintiff next alleges that defendant violated his Fifth Amendment right to due process by removing him from his position as a result of the 1996 RIF without first providing him with notice and a hearing. To determine whether a plaintiff's Fifth Amendment rights have been violated, the Court must determine whether plaintiff was deprived of a protected interest, and, if so, whether plaintiff received the process to which he was due. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985). To show a property interest in government employment, a plaintiff must demonstrate that under the relevant state law, "he did not serve in his job at his employer's 'will,' but he could be removed only 'for cause.'"

*Laureano-Agosto v. Garcia-Caraballo*, 731 F.2d 101, 103 (1st Cir. 1984) (citing *Bishop v. Wood*, 426 U.S. 341, 344-47 (1976)).

Our Circuit Court reversed the previous District Court's dismissal of plaintiff's Fifth Amendment claim because it found that it could not be "determine[d] on this basis of this complaint alone" that plaintiff's due process rights were not violated. However, the Circuit Court was not presented with the public records that demonstrate that at the time of his removal, plaintiff was an at-will employee of the District of Columbia Chief Financial Officer ("CFO"), and, therefore, did not have a protected property interest in continued employment.

The employment status of employees such as plaintiff converted from career service to at will on September 21, 1996. On that occasion, Congress passed the Omnibus Consolidated Rescission and Appropriations Act of 1996 ("OCRA") § 152(a), Pub. L. No. 104-134, 110 Stat. 132 (1996), which converted the civil service status of certain employees to at-will employees. *District Council 20, AFSCHME v. District of Columbia*, No. 97-0185, 1997 U.S. Dist. LEXIS 11798 (D.D.C. July 29, 1997) (holding that the District of Columbia financial employees who were terminated after passage of the OCRA did not have a protected property interest in their employment at the time they were discharged and that the CFO did not violate the subject employees' Fifth Amendment due process rights by dismissing them), *aff'd*, No. 97-7146 1998 U.S. App. LEXIS 32473 (D.C. Cir. May 14, 1998); *Leonard v. District of Columbia*, 794 A.2d 618 (D.C. 2002). The D.C. Lottery and its employees were officially placed under the authority of the CFO on September 21, 1996.

(*See* Order of the D.C. Financial Responsibility and Management Assistance Authority of Sept. 21, 1996, attached as Ex. 1 to Mot. J. Pleadings.)[2] The at-will status of the Lottery employees was further confirmed by an order from the CFO on September 24, 1996, which stated that "[a]ll personnel of the Lottery serve at the pleasure of the CFO." (Financial Management and Control Order No. 96-16 of Sept. 24, 1996 ¶ 1, attached as Ex. 2 to Mot. J. Pleadings.)

The Circuit Court expressed concern because it was unclear from the record whether plaintiff was transferred by his supervisors into a position "doomed" to be eliminated by the RIF. *Thompson*, 428 F.3d at 288. However, given the showing by defendant that all employees of the D.C. Lottery became at-will in September 1996, the Court does not have to reach such a determination as it is clear that plaintiff was already an at-will employee at the time of his placement into the temporary position and eventual termination, and, therefore, he had no protected property interest in his continued employment. Accordingly, plaintiff's Fifth Amendment claim must also be DISMISSED.

---

[2] The Court hereby takes judicial notice of the orders issued by these governmental entities. Courts may take judicial notice of "public documents, even if they are not included in, or attached to the complaint." *See Savage v. Scales*, 310 F. Supp. 2d 122, 129 n.8 (D.D.C. 2004) (quoting *Lipton v. MCI Worldcom, Inc.*, 135 F. Supp. 2d 182, 186 (D.D.C. 2001)) (internal quotation marks omitted). Consideration of such judicially noticeable documents does not convert this motion to one for summary judgment. *See Covad Commc'ns Co. v. Bell Atl. Corp.*, 407 F.3d 1220, 1222 (D.C. Cir. 2005); *Equal Employment Opportunity Comm'n v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).

## CONCLUSION

For the foregoing reasons, the Court GRANTS defendant's Motion for Judgment on the Pleadings. An order consistent with this Memorandum Opinion is separately and contemporaneously issued herewith.

_____
RICHARD J. LEON
United States District Judge