**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| MICHELLE THOMPSON, *Personal Representative of the Estate of James Thompson,* | ) ) ) ) ) | |
| Plaintiff, | ) | Civil Case No. 97-1015 (RJL) |
| v. | ) ) ) | |
| DISTRICT OF COLUMBIA, | ) ) | |
| Defendant. | ) ) ) | |

**MEMORANDUM OPINION**
August __7ᵗʰ__, 2026 [Dkt. #243, 248, 254]

This is the latest installment in the saga of James A. Thompson, Jr., an employee of

the District of Columbia Lottery ("the Lottery") from 1985 through 1997 who was forced

out after repeatedly raising concerns about waste, fraud, and abuse. In May 1997,

Thompson filed suit under 42 U.S.C. § 1983, alleging that the District of Columbia ("the

District" or "defendant") violated his Fifth Amendment due process rights. Thompson has

since died, but the suit has been continued by his daughter, Michelle Thompson

("plaintiff"). After multiple trips to our Circuit Court,[1] the question of liability has been

settled in plaintiff's favor, and all that remains is the calculation of damages.

---

[1] *See Thompson v. District of Columbia* ("*Thompson I*"), 428 F.3d 283 (D.C. Cir. 2005); *Thompson v. District of Columbia* ("*Thompson II*"), 530 F.3d 914 (D.C. Cir. 2008); *Thompson v. District of Columbia* ("*Thompson III*"), 832 F.3d 399 (D.C. Cir. 2016); *Thompson v. District of Columbia* ("*Thompson IV*"), 967 F.3d 804 (D.C. Cir. 2020).

Plaintiff has filed several outstanding motions: for a jury determination of backpay; for partial summary judgment as to backpay; for entry of judgment as to *Monell* liability; and for issuance of a decision and scheduling of a jury trial. For the reasons that follow, I will GRANT plaintiff's motion for a jury determination of backpay; DENY plaintiff's motion for partial summary judgment, DENY as MOOT plaintiff's motion for judgment, and GRANT plaintiff's motion for issuance of a decision and scheduling of a jury trial.

<u>**BACKGROUND**</u>

**I.     Factual Background**

James A. Thompson, Jr., began working at the Lottery in 1985 as an Auditor. Pl's Mot. for Summ. J. [Dkt. #248] at 3. In 1988, Thompson was promoted to Security Officer, then to Internal Auditor, and then to Security Systems Administrator in May 1996. *Id.* at 4; Def's Resp. to Pl's Statement of Undisputed Material Facts ("Def's Resp. to Pl's SUMF") [Dkt. #252-1] at ¶ 2.

Thompson's relationship with his supervisors "quickly began to sour 'when several audits he supervised unearthed what he thought was unethical, if not illegal, behavior' at the Lottery Board." *Thompson IV*, 967 F.3d at 807 (citation omitted). Thompson repeatedly raised concerns throughout the summer of 1996, which resulted in his supervisor taking several actions that ultimately led to Thompson's separation from the Lottery. *Id.* at 807–08. Thompson was transferred from a Career Service position to a job that was in line for imminent elimination through a reduction in force. Pl's Mot. for Summ. J. at 4. Then, in the fall of 1996, Thompson's supervisor informed him that his position had been

eliminated. While Thompson briefly returned to work in a temporary position, that position expired in January 1997, leaving Thompson without a job. *Thompson IV*, 967 F.3d at 808.

## II.    This Lawsuit

In May 1997, Thompson filed this suit under 42 U.S.C. § 1983, alleging that the District denied him his Fifth Amendment right to due process prior to his termination. *Id.* In June 2004, another judge of this Court dismissed Thompson's complaint for failure to state a claim. *Thompson v. District of Columbia*, 2004 WL 5348862 (D.D.C. June 23, 2004). Our Circuit Court reversed and remanded. *Thompson I*, 428 F.3d at 284.

On remand, the case was reassigned to me, and I eventually dismissed Thompson's due process claim. *Thompson v. District of Columbia*, 478 F. Supp. 3d 5 (D.D.C. 2007). Our Circuit Court disagreed and remanded the case to allow discovery to proceed. *Thompson II*, 530 F.3d at 918–20. Following extensive summary judgment briefing, I denied both parties' dispositive motions and ordered them to brief the issue of what damages, if any, Thompson could be awarded by a jury if his due process claim was tried. I ultimately dismissed the case on the ground that Thompson could not recover damages because he offered no evidence that he would *not* have been terminated had he been afforded adequate due process. *Thompson v. District of Columbia*, 2015 WL 13673454 (D.D.C. Feb. 18, 2015).

On appeal, our Circuit Court reversed, holding that Thompson's procedural due process rights were violated when he was reassigned to a position slated for elimination without prior notice and a hearing. *Thompson III*, 832 F.3d at 345. The Circuit Court remanded for consideration of whether the District could be held liable for the

3

constitutional violation under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), and, if so, what damages the District owed. *Thompson III*, 832 F.3d at 341.

Following an unsuccessful attempt at mediation, I ultimately granted summary judgment to the District on the question of *Monell* liability. *Thompson v. District of Columbia*, 2018 WL 4705787 (D.D.C. Sept. 30, 2018). Our Circuit Court reversed. *Thompson IV*, 967 F.3d at 413. The Circuit Court concluded that the executive director of the Lottery, Frederick King, "was acting as a final policymaker on behalf of the District when he took the series of personnel actions that led to Thompson's constructive termination without due process." *Id.* Therefore, the Circuit Court held that the District was liable for King's wrongdoing and remanded for "the district court to enter summary judgment for Michelle Thompson on the question of *Monell* liability" and "for further proceedings to determine the amount of damages owed." *Id.* at 817.

Following remand, I entered judgment for the plaintiff on the question of *Monell* liability. *See* Minute Order (Oct. 5, 2020). The case was then stayed for several months while the parties engaged in mediation. *See* Minute Order (December 9, 2020). Settlement talks were unsuccessful, and the parties launched into extensive discovery on damages.

On August 28, 2023, plaintiff filed a motion for jury determination of backpay. Mot. for Jury Determination of Backpay ("Mot. for Jury Trial") [Dkt. #243]. The District responded on August 29, 2023, noting that they do not oppose determination of backpay by a jury. Resp. to Mot. for Jury Determination of Backpay ("Resp. to Mot. for Jury Trial") [Dkt. #245]. On November 26, 2024, plaintiff filed a motion for summary judgment as to backpay and a motion for entry of judgment as to *Monell* liability. Pl's Mot. for Summ. J.

4

as to Backpay ("MSJ") [Dkt. #248]. In it, plaintiff maintained that while backpay could be settled on summary judgment, emotional distress damages must be determined by a jury. *Id.* at 2. On February 7, 2025, the District filed its response in opposition to plaintiff's motion for summary judgment. Def's Resp. Opp'n to Mot. for Summ. J. ("Opp'n to MSJ") [Dkt. #252]. Plaintiff filed her reply in support on February 21, 2025. Reply in Supp. of Mot. for Summ. J. ("Reply") [Dkt. #253].

Following a motion for issuance of a decision and scheduling of a jury trial, *see* Pl's Mot. for Decision [Dkt. #254], I held a status conference to discuss the posture of the case and potential dates for a jury trial. Plaintiff's pending motions are now ripe for decision.

### LEGAL STANDARD

Summary judgment is warranted where "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). "A fact is 'material' if it may affect the outcome of the litigation." *Montgomery v. Risen*, 875 F.3d 709, 713 (D.C. Cir. 2017). An issue of material fact is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In response to a motion for summary judgment, "the non-movant must identify specific facts in the record to demonstrate the existence of a genuine issue." *Montgomery*, 875 F.3d at 713. However, "[t]he burden is always on the movant to demonstrate why summary judgment is warranted." *Winston & Strawn, LLP v. McLean*, 843 F.3d 503, 505

(D.C. Cir. 2016) (citation omitted). The court should draw "all justifiable inferences" in favor of the non-movant. *Anderson*, 477 U.S. at 255.

**ANALYSIS**

### I. Motion for Entry of Judgment as to *Monell* Liability

Plaintiff requests that the Court enter judgment against the District and in favor of plaintiff on the question of *Monell* liability. *See* Opp'n to MSJ at 2. I have already done so. *See* Minute Order (Oct. 5, 2020) ("In light of the Judgment and Mandate of the U.S. Court of Appeals for the District of Columbia Circuit issued on September 8, 2020, it is hereby ORDERED that summary judgment is GRANTED for plaintiff Michelle Thompson on the question of Monell liability."). Plaintiff's motion will therefore be denied as moot.

### II. Motion for Partial Summary Judgment as to Backpay

Plaintiff has filed a motion for partial summary judgment as to backpay damages, arguing that there are no material facts in dispute as to backpay and plaintiff is entitled to backpay as a matter of law. MSJ at 3. Because there are several genuine disputes of material fact, summary judgment is not appropriate here.

### A. *Failure to Mitigate Damages*

There remains a genuine dispute as to whether Thompson made diligent efforts to mitigate his damages by seeking other employment following his separation from the Lottery. "[F]ailure to mitigate is an 'affirmative defense' to claims for lost wages." *Coulibaly v. Pompeo*, 2020 WL 1536185, at *7 (D.D.C. Mar. 31, 2020) (quoting *Barbour v. Merrill*, 48 F.3d 1270, 1280 (D.C. Cir. 1995)). An employer can prove that a claimant failed to mitigate damages by establishing: "(1) the claimant did not make reasonably

6

diligent efforts to find other suitable employment and (2) other suitable employment was, in fact, available." *Id.* (citing *Hutchison v. Amateur Elec. Supply, Inc.*, 42 F.3d 1037, 1044 (7th Cir. 1994)). The employer "bears the burden of persuasion on its affirmative defense." *Sebunya v. Mayorkas*, 2024 WL 1076809, at *20 (D.D.C. Mar. 8, 2024).

Here, the District has shown enough to create a "genuine issue." *Celotex*, 477 U.S. at 322. Thompson waited nearly two years after his separation from the Lottery to apply for a job. Def's Resp. to Pl's Statement of Undisputed Material Fact ("Def's SUMF") [Dkt. #252-1] ¶¶ 3, 21–22. After he applied unsuccessfully for a position as a security auditor, plaintiff did not "seek any similar type of position ever again." Def's SUMF ¶ 23 (citing Ex. A, Thompson Depo. Excerpt [Dkt. #252-2] at 176). Meanwhile, the parties have agreed that there were comparable positions available at the time. *See* Opp'n to MSJ at 6–7; Reply at 7.

Plaintiff argues that the mitigation-of-damages requirement does not apply because Thompson was disabled as a result of the District's misconduct. Reply at 5–6. Backpay is generally unavailable where a plaintiff "is completely unable to work due to a disability." *Coulibaly*, 2020 WL 1536185, at *7. "If the employer *caused* the disability through its discriminatory conduct, however, back pay is still available." *Id.* (citing cases). Plaintiff cites letters from Thompson's doctor stating he was "suffering from a severe emotional condition *brought on by work related conditions*," Reply at 4 (quoting Ex. 2, Letter from R. Wadeson to F. King (Jan. 7, 1997) [Dkt. #253-2] at 1), as well as testimony from Thompson that he did not look for employment after his termination because he "was still trying to get [him]self together," Reply at 10 (quoting Ex. 7, Thompson Depo. Excerpt

[Dkt. #253-7] at 154). However, Thompson also testified that he was a "lot better" after his treatment and he "was able to get up and move around" and was "keeping [him]self together spiritually and mentally." *Id.* Thus, a genuine dispute remains as to whether Thompson was "*completely* unable to work" due to mental health issues. *Coulibaly*, 2020 WL 1536185, at *7 (emphasis added).

Ultimately, the parties present different stories about the reasonableness of Thompson's efforts to find a job after he was terminated—and whether he was able to work at all. Based on the evidence before me, a reasonable jury could adopt the District's view of things. These factual disputes create genuine issues for trial. *Anderson*, 477 U.S. at 248.

> B.    *Work-Life Expectancy*

Summary judgment is likewise not appropriate because there is at least one genuine dispute as to the calculation of backpay. "As a general rule, the amount of backpay awarded is the difference between what the employee would have earned but for the wrongful discharge and his actual interim earnings." *Oil, Chem. & Atomic Workers Int'l Union v. NLRB*, 547 F.2d 598, 602 (D.C. Cir. 1976). At the outset, the plaintiff must "establish[] the value of the lost salary and benefits." *Barbour*, 48 F.3d at 1278. The parties must "present competent evidence" on the question of work-life expectancy—such as lay testimony, expert testimony, and statistics—though the calculation "may involve some amount of speculation." *Weil v. Seltzer*, 873 F.2d 1453, 1464–66 (D.C. Cir. 1989).

Here, there is genuine dispute over how much longer Thompson would have worked at the Lottery past 1996. In his May 2001 deposition, Thompson testified that he intended to work until age 65. Opp'n to MSJ, Ex. A, Thompson Depo. Excerpt [Dkt. #252-2] at 148

("I plan to work until I'm 65 . . . ."). However, in a 2010 affidavit, Thompson stated that at the time of his termination in 1997, he "had planned to continue working for many more years, at least until [he] had achieved 30 years of service." MSJ, Ex. 7, Thompson Affidavit [Dkt. #248-7] ¶ 19. That would have put his retirement at age 68. *Id.* ¶ 18–19. In reality, Thompson worked as a substitute teacher and personal attendant from 2002 until 2009 and retired at age 70. *Id.* ¶ 24–28.

This conflicting evidence creates a genuine dispute as to how long Thompson would have worked at the Lottery had he not been terminated. These disputes can only be resolved by weighing the credibility of Thompson's deposition testimony against the fact that Thompson worked much longer than he originally estimated. Only the jury may "make credibility determinations or otherwise weigh the evidence." *Johnson v. Perez*, 823 F.3d 701, 705 (D.C. Cir. 2016). As such, the issue must go to a jury.[2]

### III.  Motion for Jury Determination of Backpay

Finally, plaintiff alternatively asks that backpay be determined by a jury and requests an order setting this case for a jury trial. *See* Mot. for Jury Trial; Mot. for Decision. The District does not oppose the determination of backpay by a jury. *See* Resp. to Mot. for

---

[2] The District also argues that Thompson's expected salary rate over time is genuinely disputed. *See* Opp'n to MSJ at 8–9. This argument carries less water. The District contests the notion that Mr. Thompson would have been paid pursuant to a new pay structure implemented for "management" employees starting in 2005. *Id.* But plaintiff cites to deposition testimony from Carol Jones, the District's designee under Federal Rule of Civil Procedure 30(b)(6), stating that Thompson "would have been eligible as a career service employee." MSJ, Ex. 6, Jones Depo. Excerpt [Dkt. #248-6] at 100:18–19. The District further challenges the pay scales presented by plaintiff, arguing that they lack foundation. Opp'n to MSJ at 8–9. But these pay scales stem largely from public sources and, thus, would be admissible at trial. *See* MSJ at 6–8 (citing District of Columbia Personnel Manual §§ 11B-1127.4, 3802.1).

Jury Trial. Therefore, I will grant the motion for a jury determination of backpay and will schedule a jury trial on the issue.

### CONCLUSION

For the foregoing reasons, I will GRANT plaintiff's motion for a jury determination of backpay, DENY plaintiff's motion for partial summary judgment, DENY as MOOT plaintiff's motion for judgment, and GRANT plaintiff's motion for issuance of a decision and scheduling of a jury trial. A separate order will accompany this opinion.

RICHARD J. LEON
United States District Judge